May it please the court, Anne O'Connell Adams for the United States. The issue in this case is whether the officers had probable cause to believe that the red jeep driven by Mr. Borrome Diaz contained evidence of a crime when they searched it pursuant to the automobile exception. You're saying that they searched it pursuant to the automobile exception that was not in the plan? That's correct. Yes. You know of any case that would substantiate or be consistent with applying the automobile exception in a case where the automobiles, if on a public highway, it's a quasi-public highway, it's one in which the car has been stopped, blockaded by police cars, and the occupants of the car or jeep are handcuffed or laying face down on the ground outside of the jeep? Do you know of any case that would substantiate the automobile exception? Well I think any of the court's automobile exception cases are just based on whether the facts constituted probable cause. So I think in- Well that's why I asked you the question. You're not relying upon probable cause. I asked you specifically if you're relying upon the automobile exception. You said you were. That's right. Okay. Because there was probable cause to believe that evidence of a crime- Well, that's why the automobile exception comes into the warrant. It doesn't get to a search unless they're exigent circumstances. That's where the automobile exception comes into the warrant requirement. And that's what you said you were relying upon. Right. But the automobile exception does get you out of the warrant requirement. It's based on probable cause and there do not need to be exigent circumstances. The automobile exception is based on both the fact that a car can move easily and the reduced expectation of privacy in a car. So the automobile exception, that is the exigent circumstance? Yes.  So there's no separate requirement for exigent circumstances under the automobile exception. It's just, it's an automobile and there's probable cause to believe that there's evidence of a crime or contraband in the vehicle. We think that was adequately met here and then some. Before officers stopped the Jeep, they had a tip that people would be moving drugs in this particular area. They spotted jet skis moving from Puerto Rico to Mermaid's Chair Beach on the west side of St. Thomas, which the officers testified was an increasingly likely path of drug movement in the area. They saw a quick duffel bag transfer on the beach and both parties immediately retreated. And when the officers stopped the Jeep, there were six people inside of it, five of whom had wet sandy feet, which matched the number of people seen on the beach, plus a driver with dry feet. There was a gun. But nobody could identify, nobody could identify the folks in the car as the folks that did the transfer. Is that correct? When they stopped the car or at the time?  Yeah, I think that at the time they, at the time they stopped the car, they had at least a reasonable suspicion that this was the car parked on the top of the landing there at Mermaid's Chair Beach. Now, most of this crime is recorded on video. The airplane that was recording the transaction on the beach, it followed the jet skis at the end of the transaction to provide cover to the boats that were going to try to stop the jet skis. So there is no actual video of the people on the beach getting into the Jeep and driving away. But the officers can use their common sense and just their experience to understand that that is the most likely thing that happened here. There was only one Jeep parked there up at the top of the landing. It was the only car in the area. And these were the only people on the beach. Was the Jeep taken into custody, so to speak, by law enforcement? Uh, during the, at the initial stop, no, it was a, it was a Terry stop. And the, that, that's what the district court found. And that the, the, No, that's not, I guess my question is, was the Jeep seized by, by law enforcement? Uh, yes. I think a Terry stop is a seizure, for sure. Did they take it into their custody? Did they do an inventory search, et cetera? Was it, what happened to the Jeep after the, after this incident? I'm not sure there's anything in the record about that. And I don't know. Wouldn't that be important? Because you could, relatively easy on these facts, I assume, develop a record that would substantiate an inventory search. But that was not done. Yeah, we're not, we're not relying on the inventory search exception here. We are relying on the, the automobile exception, um, for the, the search at the time that it was, was conducted. I'm reading, are you familiar with Arizona v. Gantt? Yes. In court case. Well, the court said there are limitations to the automobile exception insofar as it serves as an exception to a warrant requirement. And there the court said the officer may only search the area, quote, within an arrestee's immediate control, meaning the area from within which he might gain possession of a weapon or destructible evidence. It's at page 335 of the, of the Gantt decision. How is the area that was searched within the immediate control of the arrestees in this case? It, it wasn't, but Gantt is not a case about the automobile exception. Gantt is a search incident to arrest case. So there's, when there's a search incident to arrest, and that's what the officers are relying upon. Then they do need to have both, you know, probable cause and the, the, the idea that the person could have access to the weapons that are. What are the differences between the search incident to arrest? That's another exception to the warrant requirement, right?  The only reason you can conduct a search incident to an arrest is because there has been an arrest, and officers are entitled to basically protect themselves and make sure that a lot of evidence can be destroyed, and therefore, incident to that arrest, the warrant is not required, and a search can be conducted. But you're saying that the automobile exception in this case is broader than a search incident to arrest. Yes. And that they can search the interior of a car without a warrant, even though there's no way the occupants of the car, the prior occupants of the car, can get to the car. And given the way that car was secured by the law enforcement on the scene, there's no way the evidence could have been destroyed. You could have just posted somebody there to get, and gotten a warrant. It's, it's not based, the automobile exception is not based on officer safety, like search incident to arrest, or like the Terry Frisk. So, it doesn't matter under the automobile exception, that the people have been secured and can't get back into the car. So what is it, what is it based upon? Help me understand that. It's based upon probable cause that there will be evidence of a crime or contraband in the car. It is true that you could stop in that point and get a warrant. But the Supreme Court's cases, and, and this is exactly what the police officers were, or the, the federal agents were following here, is that you don't need to go get the warrant at this point if you have probable cause to believe that evidence of a crime or contraband will be found in a car. And the evidence of a crime in this case would be the narcotics transaction or the fact that a gun was found in the first instance? I think it could, the narcotics transaction. I, I agree that it's not illegal in the, in the Virgin Islands to, to have a gun. I think the narcotics transaction is, is what we're primarily relying upon. Because there was probable cause to believe that a drug transaction had taken place, finding the first gun is more evidence of a crime of the 924C violation. But I think that's one piece of the district court's opinion with which we disagree, was the, the, the district court saying that because this was a one way transaction, it was a drug transaction, but they gave the drugs away to the jet skis so you wouldn't find drugs in the car. We think that's wrong because there could be other evidence of a drug transaction in the car that took the people to that transaction. What would the evidence be? Guns? Guns, ledgers, anything that, that lets the officers know that they have the right to search people, the, the automobile exception is like the equivalent of, of a search conducted pursuant to a search warrant. You need, like if you could get a search warrant at this point, then you can search it pursuant to the automobile exception without a warrant. That's an amazing statement. I'm, maybe you can help me with some cases that support that though. You're saying that whenever you have a car, the warrant requirement automatically goes out the window because of the very nature of the car, whether or not the car has been secured, whether or not the occupants of the car have access to the inside of the car. Yet, if that's the argument, then you don't need a separate inventory search. There's another exception to a warrant requirement, which is the inventory search exception. The inventory search exception, given your logic, is superfluous. Because you've already arrested the people, you don't have to lay the record for an inventory search. So why have, why require a record to be shown, a record to be established for inventory search once you make the arrest and they're driving the car? I think in this case, the- So in general, not just driving, in general. The officers didn't know, and they won't know, if they're going to arrest the people and do an inventory search. They did this automobile search, the district court's opinion says about 15 minutes into the stop. At that point, they're still trying to build a case. They have probable cause to go into the car and search for evidence of the crime that they're investigating, just as they would be able to get a warrant for the car. They seized the first gun, and I'm assuming that these guys, after being handcuffed and laying face down in the sand for about an hour, and couldn't get them out in that time. I know the officer said that had they not recovered drugs from the water, they wouldn't have arrested these folks. And there's another issue about whether or not these folks were actually under arrest. You're saying that had they not found drugs, which they didn't find in the jeep, they found them in the water, that these six people would have been free to go. I'm not sure, but that is a more likely outcome. I think if- The officer said, said they wouldn't have arrested them. There's a difference between the automobile exception and the arrest that came later. The automobile exception is based on probable cause that you would find evidence in the car. And then the arrest that came later is based on probable cause that a crime's been committed and these people committed it. So the officers did wait to- I thought the automobile exception was based on accident circumstances, not based upon the fact you might get lucky and find drugs in the car. It's based on exigent circumstances in that it's the movable nature of the car. The Supreme Court's decision in Michigan versus Thomas, I think it's from 1983, says that the exception does not depend on the likelihood that the car will be driven away before a warrant can be obtained. It's just a categorical exception. In terms of the timing, right? So they find the first gun, and they're still pursuing the jet skiers, as I understand it. They search the car and find the second gun before they get information from the folks pursuing the jet skiers?  The record at JA 233, Agent Frechette testifies that as soon as they found the first gun, the next thing he did was get back on the radio or however they were communicating with the plane and learned that the jet skis were fleeing. So by the time they searched the car pursuant to the automobile exception, they had that information. But they didn't have the drugs, correct? They just had that the jet skiers were going away.  And this court's decision in Laville says that when you're doing a Terry stop and the person flees, that that can escalate to probable cause. And so the district court's response to that was that, yes, maybe that now constitutes probable cause for the people on the jet skis. But we still don't know that the people in the car are connected to them. And that just loops right back around to the divide and conquer analysis that we've pointed out in our brief. That the district court was engaged in here, that once they stopped the car, and they had more than reasonable suspicion to do that, that they connected this car to that transaction on the beach with the wet, sandy feet and with the gun. And the district court said, well, it's not illegal to have wet, sandy feet. These people could have come from a different beach and gotten into that Jeep, which I think we've argued in our brief that that was a clearly erroneous, factual finding that this landing spot only had access to Mermaid's Chair Beach, and there was nobody else on the beach that morning. There's not really a public road then. That little road with the bridge that accesses this part of the island where the beach was, that's not a public road, it's unique to the, I don't know the area at all. I don't either. Based on the testimony in the record, it's a gated community, but you can come in there. The public can come in and go down to Mermaid's Chair Beach. The testimony in the record says that vehicle access is restricted, but that you could walk down to Mermaid's Beach after passing through the gate. But the record says that there's very little vehicle traffic in the area. It's my understanding, just from the record and from looking at a map, that there's just a few houses within the gated community. But at the Mermaid's Chair Beach, there is one landing spot, there was one red Jeep parked there. And so the officers could use just their logical reasoning, even though they're not getting cover from the aircraft at this time, to know that that is the same Jeep that's about to pull out of the gate that had just engaged in what they believed was a drug transaction on the beach. So I guess I'm a little curious of why we're here, right? So it's my understanding a suppressed weapon could be used at sentencing. And why did the government appeal this? I'm wondering that too. Yeah, the second gun is material evidence that would significantly increase the likelihood of a conviction on the 924C count. Otherwise, you have six people in the car and one gun in the back seat. You can see people trying to argue over who had that gun and playing hot potato with it during a trial. You still got four more people than you do guns. Yes, but with the second gun in, we have a gun in the front seat, we have a gun in the back seat. And the gun in the front seat also has no serial number on it. Which, as this court's cases have said, Marazella, that there's no lawful purpose for a gun without a serial number. So I think the gun- Was it in the front seat or in a console? Excuse me? Was it in the front seat or in some sort of console? In the console, in between the front seat and the passenger seat. So going back to my colleague's question, you've got the drugs that were recovered from the water. The testimony of the agents that they saw duffel bags being taken from the shore, not from the jeep to the shore necessarily, but from the shore to the guys on the jet skis. And what happened to the guys on the jet skis? They fled. Some of them were, three of the four of them were eventually apprehended. And the drugs were recovered from next to one jet ski that had been abandoned. And that gun is crucial to your appeal? Yes, for the 924 C count, it is. Thank you. Good morning, Ms. Boykin. Good morning. May it please the court. As an initial matter, I would like to correct my brief to a certain extent in saying that there may be a related case to the extent that the case against the individuals on the jet skis is proceeding in Puerto Rico. I know the trial court recently ordered the government to file some documentation from that case and this case. So I don't know the court's threshold exactly, but that may be considered a related case. Thank you. Okay. This is a case that really should give all lawful citizens pause and any person. What happened here is that the government received a tip, an anonymous tip to the extent we're concerned. They may call it a confidential informant, but the tip essentially said there's going to be criminal activity afoot at a certain place. This place is the west end of St. Thomas. St. Thomas is divided into east, west, north, and south. That's not particularly specific. There was no information about the individuals who would be involved in this. But the officer's own eyeballs corroborated that tip. They see activity which is consistent with the drug deal at the part of the island where the person who gave them the information, the tip, said there was going to be a drug transaction. So that, I mean, if you're arguing the reliability of the tip, it seems to me the tip, the reliability of that tip is confirmed by the officer's own observations. It's too much of a coincidence that they're told that a drug deal's going to go down in the western part of St. Thomas. The officers go there, and I think they said the jet skis may have been involved. I'm not sure, but I think they did. They see jet skis, four or five guys coming in on jet skis in proximity to a jeep. Duffel bags being taken from the beach to the duffel bags. I mean, that tip is pretty tight at that point, isn't it? Not at that point, which is the problem. That tip was only confirmed and perhaps could be said to be reliable over an hour later once the jet skis were apprehended back in Puerto Rico. At the point of the observation on St. Thomas, the only thing that the officers could reasonably and specifically articulate is that duffel bags were transported or transferred from certain individuals emerging from the bushes on a beach in the west end of St. Thomas in Botany Bay to individuals on jet skis. Duffel bags aren't contraband. There was no observation of drugs at that point in time. As a matter of fact, the officers didn't even know how many individuals were involved. First, they saw three, then they saw four, then they saw five. A full 20 minutes later, they see a vehicle exiting this gated community. That's not close in proximity and time. Looking at the cases in this court that this court has examined for search and seizure, what's been deemed reasonable is two minutes later, three minutes later, seven minutes later. A full 20 minutes is adequate time to spend at the beach. And there were, in fact, two beaches, as a district court noted, accessible from this point. Again, surveillance was only conducted on one of those beaches. 20 minutes later, this vehicle is exiting the gated community. It is stopped at gunpoint and physically blocked by the vehicles of the officers. I don't know if that really passes muster as an investigatory stop. To me, if somebody stopped me at gunpoint, physically blocking me with a vehicle, I might want to think that I'm under arrest. But again, that's not what we're here for. Nonetheless, at that time, they caused all the occupants of the vehicle, who numbered more in quantity than the number of individuals on a beach, to exit. These individuals were told to exit the vehicle at gunpoint, placed face down on the ground, and handcuffed with their hands behind their back. There they were left. After that was done, the vehicles, the officers went on to search the vehicle. No contraband was observed in the vehicle. No contraband was found. They found a firearm, as has been clearly established for over 25 years now. U-biles, just possession of a gun, is not a crime in the Virgin Islands. I believe this court affirmed that in a range where even a felon in possession has a right to possess a firearm under the Second Amendment. So, after- Under the obliterated serial. What would the founders have thought under the Bruin Inquiry? I'm sorry? What would the founders have thought about an obliterated serial number? What would they have thought about? Yeah, how would they have looked at that? Is that consistent with the Second Amendment right to possess? I believe that this case is just consistent with U-biles. Six individuals were found in the Jeep. There's one firearm. My client is the individual who's in the driver's seat. The firearm that was observed in plain sight was in the back compartment behind him. These individuals had already been forced out of the Jeep. There's absolutely no reason why they wouldn't have been entitled to a right to possess a firearm in this circumstance, especially based on what was known at the time, and even considering what is known now, looking at the way that this precedent had developed. So why doesn't the automobile exception allow the officers to do what they did here? Because the automobile exception is not an all-inclusive pass to forgo obtaining a warrant. The automobile exception is just a brief exception allowing officers to investigate. They performed that investigation. They found a firearm. They removed the firearm. There was no individual who could... That was plain view. That wasn't really pursuant to an investigation of the automobile exception. I thought that was just a plain view. It was in plain view, and finding that firearm is tantamount to finding a hamburger in a car. It's not contraband. That doesn't give the officers any more reasonable suspicion that the vehicle contained evidence of criminal activity than finding a shoe in the back seat would have. At that point in time, they had no reason to continue to detain these individuals. Importantly, their own witness testified that they detained these individuals for over one hour waiting to see if a crime would have been committed. That's completely unconstitutional and completely against the precedent set by this court and the Supreme Court of the United States. The automobile exception permits a de minimis additional intrusion. You can require the driver of the vehicle to exit. You can require the passengers to exit, but there's no case that says you can require the driver and the passengers to exit and then go on and search the vehicle when there's no chance whatsoever that those individuals could access the vehicle or could access anything inside it that could pose a danger to the officers. How are they going to get up and access the vehicle when they're face down on the ground with their hands handcuffed behind their backs? Absolutely impossible. The exception further permits officers to employ certain negligibly burdensome precautions. I can't imagine any greater burden than being exited from a vehicle with a gun to your face and made to lie on the ground while officers wait to see if a crime has been committed. The district court did not commit clear error in its findings of facts. The district court was correct in interpreting the law to the facts, especially in the totality of the circumstances. If this case looks at its recent decision, even though it's non-presidential in Goodrich, that's what should have happened here. The officers in Goodrich received a report about potential criminal activity in a high crime area because there were thefts of ingredients, I believe, used to make meth in a certain area. The officers saw a car exiting the area. They stopped it. They did a brief investigation. And then they went and obtained a warrant. Obtaining a warrant isn't a punishment. It isn't some unreasonable burden. It's a constitutional mandate. And if you can stop these individuals for over an hour waiting to see if you're going to arrest them, you surely have time to obtain a warrant. And that's what should have been done here. It wasn't done here. And the district court was 100% correct in its assessment and its suppression of the second firearm. So on these facts, did they have probable cause to get a warrant? I don't believe so. Especially if you look at what was known to the officers at the time that they forced these individuals to exit the vehicle. If they wanted to conduct a search, they should have tried to obtain a warrant. I don't believe that the court should have issued it. Would the court have issued it? Maybe. But they made no effort whatsoever to do that. And they clearly had the time to do so. They had the ability to do so. And they should have done so. Would you add to the equation the evasiveness of the people in the jet skis, the high-speed, not the high-speed chases, I think, but the high-speed attempt to avoid aerial surveillance. Add that into all of the factors. Would that have been enough of a probable cause for a warrant to search the jeep? It may have been had that occurred prior to the stop. However, all of that happened at least 20 minutes after the individuals were seen on the beach. Because that's how long it took the vehicle to try and exit the gated community. And it happened, you know, continuously at that point in time. Was there evidence that the individuals in the jeep committed a crime? No. There's a separate case for these individuals on jet skis. So, yes, it would give law enforcement the authority to perhaps obtain a warrant and search whatever is associated with the jet skis. But concerning these individuals in the vehicle, where nobody observed anyone exit the vehicle and go to the beach, nobody observed anybody come from the beach and enter the vehicle. This is just a vehicle that was in a gated community. When they searched the vehicle initially, they did see a parking pass of one of the individuals, my client, in the jeep. So they then gained what would be more exculpatory evidence showing that, hey, at least one of these people has a right to be here. It being a gated community with one entrance and one exit, you know that you either had to be let in by an individual if you're in a car or had some other right to be there. So what was known to the officers at that time most certainly would not have supported any additional search or any warrant. But again, they were held for an unreasonably long time. And what was happening with the jet skis was a separate matter. You have to fill in so many blanks here that it's just impermissible. And it would be really frightening to grant the relief that the United States is requesting. How far was the jeep from the wooded area that was closest to the part of the beach that the jet skis departed from, if that's on the record? I know it was close, but I don't know how close it was. I don't know how close it was either. Um, you know, I, of course, saw the video. It's available to the court and it really doesn't give us any assessment. The video, it's almost like someone got a video camera for Christmas and decided to try it out one day. It's not super helpful. Exactly. Because it doesn't show what blanks need to be filled in that the government is asking his court to fill in without evidence. So, you know, we can perhaps go online and see if there are some sort of measurements from the government, from the United States, from some official body that you might be able to take judicial notice of. But independently, I don't know how far it was. You know, and the court can, of course, look at the testimony and the record that shows that there were two beaches. But how close each beach was to the location where the vehicle was, we don't know. The officers didn't know that, which is the bigger problem. And no connection in between those two things was ever made. Just like there was no connection between my client and any beach. But no other vehicle was ever seen on either beach, was it? On this beach or the other beach? No individual from the vehicle was necessarily seen on the beach. That connection was never made. But no other vehicle, was there any other vehicle? There was, no, there was no other vehicle in the area. You could access those beaches by land or water. All beaches are public in the Virgin Islands. So somebody could have come up in a dinghy, a boat, a jet ski, whatever. But in terms of a vehicle, there was one vehicle there. And that vehicle had a right to be there, which is the vehicle driven by my client, whose pass was found hanging from the rear view mirror. So the vehicle being there, in and of itself, is more exculpatory than anything. And looking at the individual characteristics, which this court required in its case that's last year in Carter, where you said the officer must have reasonable suspicion grounded in specific unarticulable facts that a person they encounter was involved in or is wanted in connection with a completed felony. My client, no wet, sandy feet. He's coming from a place where you see a parking pass where he has a right to be. A greater number of individuals seized in a vehicle than the number of individuals seen on the beach. No connection between those individuals in the vehicle and the individuals on the beach, either coming or going. No contraband found in the vehicle. You know, the officers should have let him go. Like they said that they would have absent the hour plus stop to see what happened with the jet skis. So I implore this court to find that the district court came out with the right decision. That the district court did not commit clear error in its findings of fact or its conclusions of law. And that the officers did not have probable cause either at the time of the first stop or the subsequent search. And please affirm the decision of the district court suppressing the second firearm. Unless there are further questions, I thank the panel. Thank you. Thank you. Just a couple of points. There's been some discussion this morning about the nature of the stop and the length of the stop. The district court's opinion explains all the case law in the third circuit that supports every step of the police officer's conduct. The felony stop is this court's decision in Johnson because the police believed that they had just observed a drug transaction. They could believe that there were guns involved and that they could draw their guns to approach the car. They were outnumbered. And the suspects were still in the car. So this court's decision in Johnson gives the justification for the way they approached the Terry stop. The first gun was seized pursuant to a Terry frisk of the vehicle, Michigan versus Long. And then this court's- How about a plain view? No, it was a Terry frisk. And this court- I'm having trouble with the concept of a frisking a car. Yeah, it's Michigan versus Long, the Supreme Court case. And then this court's decision in Davis, the idea is that you're frisking the car because it's in the vicinity of the place where the people are being stopped. And unlike the search instant to arrest Arizona v. Gant that we were talking about earlier, the justification behind being able to do that, even though the people are secured and away from the car, is because at this point, it's still just an investigatory stop. So we don't know if the people are going to be released back to the car eventually. And then under the automobile exception, I think the, I mean, the facts here are what they are. If the police had probable cause to get a warrant to search the car at the point that they searched it, then they can search it pursuant to the automobile exception. The Supreme Court's decision in Michigan versus Thomas says that exception doesn't depend on the likelihood that the car will be driven away before the police can get a warrant. The fact that Mr. Borrome-Diaz had a right to be in the Botany Bay Preserve and didn't have wet, sandy feet shouldn't play into the analysis. It's all part of whether the officers had probable cause. A person who is lawfully allowed to be in the area can still commit a crime there. It was the correct number of people in the car when the officers stopped them. They observed five people on the beach once they got eyes on everybody. There were six people in the car, five that had wet, sandy feet, and the driver was the one, Mr. Borrome-Diaz, who had the dry feet. So just because he wasn't on the beach doesn't mean he wasn't involved in the crime. I think the police could infer from what they were observing what happened. And I think for those reasons, the court should reverse the district court's decision suppressing the second firearm. Thank you very much. Thank you very much, Ms. Adams and Ms. Boykin. We'll take this matter under advisement and circle back to you. Thank you very much.